UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM C. ROMA,
    Plaintiff,

v.                                                                        3:07-cv-1057 (WWE)

MICHAEL J. ASTRUE, Commissioner of
Social Security,
    Defendant.

### RULING ON PLAINTIFF'S OBJECTION TO
### MAGISTRATE JUDGE'S RECOMMENDED RULING

By this action, plaintiff William C. Roma seeks review of the final decision by the Commissioner of Social Security denying him disability insurance benefits under the Social Security Act. Plaintiff brings this case under 42 U.S.C. § 405(g). On March 12, 2010, Magistrate Judge Holly B. Fitzsimmons issued a ruling (Doc. #20) recommending that the Court deny plaintiff's motion to reverse the decision of the Commissioner or, in the alternative, to remand for a new hearing and that the Court grant defendant's motion to affirm the decision of the Commissioner. Plaintiff has filed an objection (Doc. #21) to Magistrate Judge Fitzsimmons' recommended ruling which is now pending before the Court.[1] For the reasons that follow, plaintiff's objection will be overruled; Magistrate Judge Fitzsimmons' recommended ruling will be adopted; plaintiff's motion to reverse the Commissioner's decision will be denied; and defendant's motion to affirm the Commissioner's decision will be granted.

### BACKGROUND

Plaintiff's objections are based on several alleged misstatements in Magistrate

---

[1] Defendant did not file a response to plaintiff's objection.

1

Judge Fitzsimmons' ruling and her reliance on those misstatements in reaching her conclusion. Plaintiff also objects to Magistrate Judge Fitzsimmons' application of the treating physician rule and argues that Magistrate Judge Fitzsimmons erroneously upheld the Administrative Law Judge ("ALJ") acting as his own vocational expert and his application of the medical-vocational guidelines.

## I.     General Background

William C. Roma was born on September 24, 1962 and was forty years old when he filed for disability insurance benefits ("DIB"). He earned a Bachelor of Science degree in business administration and worked as a real estate appraiser. He was insured for DIB through December 31, 2003. Plaintiff asserts that his disability stems from injuries sustained in a car accident on July 3, 1995. Plaintiff claims disability due to a combination of "emotional, physical and mental disabilities."

## II.    Procedural History

On September 2, 2003, Roma filed an application for DIB based on a disability due to the July 1995 accident. His claim was initially denied. On June 17, 2005, a reconsideration hearing was held at which only Roma testified. On October 26, 2005, ALJ Ronald J. Thomas issued a ruling denying Roma's claims. Roma appealed, and, on May 15, 2007, the Appeals Council denied plaintiff's request for review. Plaintiff, represented by counsel, then appealed to this Court.

## III.   Medical History

Plaintiff's symptoms, effects and treatment are described in detail in the recommended ruling. With limited exception, plaintiff does not object to the Magistrate

2

Judge's recitation of the record. Therefore, the Court will not recount the full record, but will instead address only those facts that relate to plaintiff's objections.

In her recommended ruling, Magistrate Judge Fitzsimmons wrote, "Plaintiff met with Dr. Keven Murphy on October 1, 2003 for a State of Connecticut Disability Determination Service Psychiatric Review Technique." Recommended Ruling at 13. Dr. Murphy's records do not indicate whether or not he met with plaintiff. The Court will assume, for purposes of this ruling, that plaintiff is correct and that he never met with Dr. Murphy personally.

Magistrate Judge Fitzsimmons stated, "On March 24, 2004, Dr. Timothy Schumacher conducted a psychiatric evaluation of Mr. Roma and found a mild restriction of daily living activities." Recommended Ruling at 14. Plaintiff asserts that he never met Dr. Schumacher. Further, Dr. Schumacher is not a medical doctor, but a doctor of philosophy ("Ph.D.").

In addition, Magistrate Judge Fitzsimmons wrote, "Dr. Chirunomula was 'unable to extract any significant dysfunction.'" Recommended Ruling at 17. Dr. Chirunomula actually wrote in his assessment, "I am unable to extract any significant cognitive dysfunction in this gentleman."

Magistrate Judge Fitzsimmons observed, "Mr. Roma was receiving DIB until December 31, 2003 and was not treated by Dr. Prywes until the end of his DIB benefit award." Recommended Ruling at 25. This statement is imprecise. The ALJ had found that plaintiff was insured – and therefore eligible – for benefits through December 31, 2003. Plaintiff has not received any DIB payment to date.

Finally, Magistrate Judge Fitzsimmons referred to Edward Moreau, the state

3

adjudicator, as a vocational expert even though there was no such evidence in the record. Recommended Ruling at 17.

## IV. ALJ's Disability Determination

Under the Social Security Act, every individual with a disability is entitled to disability insurance benefits. See 42 U.S.C. § 423(a)(1). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Determining whether a claimant is disabled requires a five-step process. See 20 C.F.R. § 404.1520. First, the court must determine whether the claimant is currently working. 20 C.F.R. § 404.1510(b), 404.1572(b). If the claimant is currently employed, the claim is disallowed. 20 C.F.R. § 404.1520(b). If the claimant is not working, as a second step the agency must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is denied. 20 C.F.R. § 404.1520(c). Once the claimant is found to have a severe impairment, the third step is to compare the claimant's impairment with those in appendix 1 of the regulations ("Listings"). 20 C.F.R. § 404.1520(d). If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled. Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998). If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step he will have to show that he cannot perform his former work. 20 C.F.R. § 404.1520(e). If the claimant cannot perform his former work, he must show as a fifth and final step that he is prevented from doing any

other work.  A claimant is entitled to receive disability benefits only if he cannot perform any alternate gainful employment.  20 C.F.R. § 404.1520(f).

The initial burden of establishing disability is on the claimant.  See 42 U.S.C. § 423(d)(5).  Once the claimant demonstrates that he is incapable of performing his past work, the burden shifts to the Commissioner to show that the claimant has the residual functional capacity to perform other substantial gainful activity in the national economy.  See Balsamo, 142 F.3d at 80.  This may require the application of the Medical-Vocational Guidelines ("grid") which places claimants with severe exertional impairments who can no longer perform past work into grid categories according to their residual functional capacity, age, education and work experience, and dictates a conclusion of disabled or not disabled.  See 20 C.F.R. § 404.1520(f). A proper application of the grid makes vocational testing unnecessary.

The grid covers only exertional impairments; nonexertional impairments, including psychiatric disorders, are not covered.  See 20 C.F.R. § 200.00(e)(2). If the grid cannot be used because nonexertional impairments are present, or exertional impairments do not fit squarely within grid categories, the testimony of a vocational expert is generally required to support a finding of residual functional capacity for substantial gainful activity.  Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986).

In this case, at step five of the analysis, the ALJ found that Roma was not disabled through December 31, 2003.

## DISCUSSION

A magistrate judge's ruling on a dispositive matter is reviewed by the district judge de novo.  28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3).  The court may

adopt, reject or modify, in whole or in part, a magistrate judge's recommended ruling. 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).

The scope of review of a social security disability determination involves two levels of inquiry. The court must first decide whether the Commissioner applied the correct legal principles in making the determination. Next, the court must determine whether the determination is supported by substantial evidence. See Balsamo, 142 F.3d at 79. Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998). The court may not decide facts, reweigh evidence or substitute its judgment for that of the Commissioner. Dotson v. Shalala, 1 F.3d 571, 577 (7th Cir. 1993). The court must review the entire record to determine the reasonableness of the ALJ's factual findings. Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

I. **Misstatements in Recommended Ruling**

As to each of the misstatements noted by plaintiff and referenced earlier, plaintiff does not indicate how it affects Magistrate Judge Fitzsimmons' conclusion.

6

### A. Examination by Dr. Murphy

As to the alleged misstatement regarding Dr. Murphy, even if plaintiff never met with Dr. Murphy, this fact would not render Dr. Murphy's conclusions irrelevant. Plaintiff points to no case, law or regulation that would lead the Court to reject Dr. Murphy's conclusions. Therefore, the Court will accept the conclusions, but accord them little weight. Vargas v. Sullivan, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.").

### B. Examination by Dr. Timothy Schumacher

Plaintiff asserts that he never met Dr. Schumacher and that Dr. Schumacher is not a medical doctor, but a doctor of philosophy ("Ph.D."). Magistrate Judge recognized that Dr. Schumacher was a psychologist (a non-medical doctor) and not a psychiatrist (a medical doctor). Recommended Ruling at 23 ("The ALJ ... found that [Dr. Ligorski's] reports were in line with the two reports of the two DDS psychologists, Drs. Murphy and Schumacher.").

Regardless, plaintiff does not specify how this is relevant or would undermine Magistrate Judge Fitzsimmons' conclusion.

### C. Dr. Chirunomula's Conclusion

The Court reads Magistrate Judge Fitzsimmons' failure to properly quote Dr. Chirunomula as unimportant. Although Magistrate Judge Fitzsimmons' language would have the reader believe that plaintiff has little dysfunction, Dr. Chirunomula found little cognitive dysfunction. In reviewing the recommended ruling, the Court finds no

7

significant adverse effect to the misstatement.

### D. DIB Deadline

Again, plaintiff fails to point out how the misstatement regarding plaintiff's eligibility for DIB benefits affected Magistrate Judge Fitzsimmons' recommendation to the Court or her review of the ALJ's decision.

### E. Whether the State Adjudicator was a Vocational Expert

Magistrate Judge Fitzsimmons referred to Edward Moreau, the state adjudicator, as a vocational expert even though there was no such evidence in the record. Again, plaintiff fails to show how this affected his rights. The Court will not guess as to how plaintiff was affected by this misstatement.

In light of the minimal relevance of each of these objections to Magistrate Judge Fitzsimmons' final conclusion, the Court overrules each objection.

## II. Treating Physician's Testimony

Plaintiff argues that the ALJ and Magistrate Judge Fitzsimmons failed to give controlling weight to his treating physician's statements of disability.

The treating physician rule recognizes that a treating physician's opinion should carry more weight than a nontreating physician's opinion. The Social Security Act regulations provide that "a treating source's opinion on the issue(s) of the nature and severity of your impairment(s)" will be given "controlling weight" if the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2). Despite this, "[a] treating physician's statement that the claimant is

disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). A retrospective opinion is similarly binding under the treating physician rule "unless contradicted by other medical evidence or overwhelmingly compelling non-medical evidence." Gercke v. Chater, 907 F. Supp. 51, 52 (E.D.N.Y. 1995); see also Wagner v. Secretary of HHS, 906 F.2d 856, 862 (2d Cir. 1990) (noting that treating physician's retrospective observations of condition before treatment began must be substantially contradicted).

Here, Dr. Mark D. Ligorski, M.D., a psychiatrist, was plaintiff's treating physician. Dr. Ligorski began seeing plaintiff on January 26, 1998, after plaintiff's accident. His report stated as follows:

> Prior to his motor vehicle accident in 1995 he had no psychiatric history but with the development of his chronic pain syndrome and cognitive problems he became severely depressed and anxious. He has been in ongoing psychotherapy and medical management with frequent decompensations.

Dr. Ligorski further noted that plaintiff had a "slightly shabby or disheveled quality to him," that plaintiff's short and intermediate memory were "impaired" and that plaintiff's concentration during a twenty-minute session was "good but poor outside." Finally, Dr. Ligorski commented that plaintiff's "emotional condition has stabilized but at a fairly low and fragile level" in response to treatment.[2]

The ALJ's ruling adheres to the treating physician rule. The ALJ found, based

---

[2] In reviewing this statement, the ALJ wrote, "Dr. Ligorski's reports show a positive response to medication and outpatient counseling for anxiety and depression." The word "stabilized" does not necessary indicate positive improvement, but only means steadiness or lack of change. See Kohler v. Astrue, 546 F.3d 260, 268 (2d Cir. 2008).

on Dr. Ligorski's diagnosis, that plaintiff has a history of "severe" depression and anxiety and that plaintiff experiences "social isolation" which leads to a "moderate social limitation." Furthermore, the ALJ found that Dr. Ligorski's remarks did not support plaintiff withdrawing from all workforce interactions. Instead, the ALJ observed that "the treatment reports ... do not support leaving all work for seven years" (emphasis in original) and that "the medication and frequency of treatment prescribed by Drs. Prywes and Ligorski would not prevent an individual from conduct[ing] work at the SGA level."

The Court will therefore overrule plaintiff's objection as it finds that there is substantial evidence in the record to support the ALJ's conclusions as they relate to the application of Dr. Ligorski's diagnosis and conclusions.

### III. Issue of Vocational Expert

As noted above, the grid applies when "a claimant's nonexertional impairments significantly diminish his ability to work – over and above any incapacity caused solely from exertional limitations – so that he is unable to perform the full range of employment indicated by the medical vocational guidelines...." Bapp, 802 F.2d at 603. In such an instance, the ALJ must consider the testimony of a vocational expert to determine whether jobs exist in the economy which claimant can obtain and perform. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996).

In his ruling, the ALJ relied on two state adjudicators' opinions about plaintiff's vocational opportunities. Plaintiff argues that neither of these individuals was a vocational expert to meet the requirements of Bapp and step five. One of these individuals referred to himself as an "Adjudicator," while the other referred to herself as a "Disability Examiner." Both individuals represent the Connecticut Disability

Determination Services ("DDS").

The ALJ is permitted to rely on the opinion of a DDS adjudicator when he indicated in a Vocational Analysis Summary Form that plaintiff's "RFC reveals he can perform work at the light level of exertion" and that a potential job type that plaintiff was able to handle. Hedman-Ouellette v. Astrue, 2009 U.S. Dist. LEXIS 52679 (D. Conn. Jan. 30, 2009). The evidence presented by the Vocational Analysis Summary Form is sufficient to show the existence of jobs in the national economy for an individual with Roma's limitations. Social Security Ruling 85-15, 1985 SSR LEXIS 20 (S.S.A. 1985) ("State agencies may use personnel termed vocational consultants or specialists.... In this PPS, the term vocational specialist (VS) describes all vocational resources personnel."). Although the DDS individuals identified themselves as an "adjudicator" and a "disability examiner," respectively, the Court nonetheless accepts these individuals as vocational experts. There is, therefore, substantial evidence to support the ALJ's findings. Plaintiff's objections will be overruled.

## CONCLUSION

For the foregoing reasons, plaintiff's objection to Magistrate Judge Fitzsimmons' recommended ruling are OVERRULED (Doc. #21); Magistrate Judge Fitzsimmons' recommended ruling is APPROVED and ADOPTED (Doc. #20); plaintiff's motion is DENIED (Doc. #12); and defendant's motion is GRANTED (Doc. #19).  The decision of the Commissioner is hereby affirmed.  The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 24th day of August, 2010.

                                                /s/
                                    Warren W. Eginton
                                    Senior United States District Judge